# Arnold Monophase Electric Company *v.* Chew, Appellant.

*Corporations—Stock subscription—Affidavit of defense.*

An action by a corporation to recover an alleged stock subscription cannot result in a judgment for want of a sufficient affidavit of defense, where it appears from the statement of claim and the affidavit of defense that the defendant with others subscribed to certain preliminary expenses (prior to the incorporation of the plaintiff company), in the taking out of patents, but there is nothing to show that the corporation had acquired the right to the unpaid subscription to the original fund, by assignment, succession or otherwise.

Argued Oct. 16, 1902.    Appeal, No. 104, Oct. T., 1902, by

defendant, from order of C. P. No. 1, Phila. Co., Dec. T., 1900, No. 519, making absolute a rule for judgment for want of a sufficient affidavit of defense in case of Arnold Monophase Electric Company v. Samuel Chew.    Before RICE, P. J., BEAVER, W. W. PORTER and W. D. PORTER, JJ.    Reversed.

Assumpsit on a stock subscription.

The statement was as follows:

The plaintiff, the Arnold Monophase Electric Company, claims from the defendant, Samuel Chew, the sum of $500, with interest from February 20, 1895, on the following cause of action:

The defendant, to wit: February 20, 1895, subscribed the sum of $1,000 toward the preliminary expenses, prior to the incorporation of the plaintiff company, for the purpose of taking out patents and manufacturing alternating current motors as invented by Professor Englebert Arnold, of Switzerland, in accordance with a subscription list and agreement prepared by Messrs. Lewis R. Schultz and J. Paul Gaylord, a copy of which is annexed hereto, made part hereof and marked Exhibit A. The defendant signed said subscription list, and subsequently the entire amount of $10,000 was subscribed, as set forth in said Exhibit A.    The defendant paid the sum of $500 on account of his said subscription to said Messrs. Gaylord and Schultz, but he has refused to pay the balance of said subscription, though often requested so to do.

A sum considerably in excess of said sum of $10,000 was subscribed, paid in and expended under said subscription plan in preliminary expenses connected with perfecting the motor and in taking out patents, etc., in accordance with said subscription agreement.

That the parties of the first part named in said Schedule A performed all the conditions and agreements by them to be performed with the said inventor, E. Arnold, and exercised their option of purchase from him and paid him the full purchase price stipulated for said patents in said option dated January 2, 1894, and took from said Arnold an assignment of said patent rights.

On July 25, 1900, the said Arnold Monophase Electric Company was incorporated under the laws of New Jersey with a capital stock of $500,000, and by various assignments is the

successor of Messrs. Gaylord and Shultz, Mathias Pfatischer, the Pennsylvania Electric Engineer Company and all other parties having any interests in said patents, as the owner of said patent rights and of said subscription. That subsequent to the incorporation of plaintiff company, to wit: September 26, 1900, a certificate for thirty shares of full paid, unassessable stock of the par value of $100, in the plaintiff company was tendered to defendant, and a request made of said defendant to pay the balance of his said subscription, to wit: the sum of $500. But the defendant refused to accept said stock, or to pay said balance of $500, or any part thereof.

And the plaintiff avers that said sum of $500, with interest as aforesaid, is now justly due and owing by said defendant and that there are no offsets or credits against the same.

### EXHIBIT A.

The following plan is suggested by Messrs. Gaylord and Schultz, representing the proposed Arnold Monophase Electric Company, by which the sum of $10,000 is to be raised for preliminary expenses prior to the incorporation of the company. According to the plan recited in the attached agreement, each subscriber is to receive the proportion of $3,000 in stock in consideration of each $1,000 invested.

The undersigned hereby agree to pay the amount set opposite their names in two payments, one half at the time of subscribing, and one half on March 15, 1895.

The whole amount is to be subscribed hereto before payments shall be payable.

" PHILADELPHIA, January 21, 1895.

| Date. | | Name. | | | Cash Amount. |
|---|---|---|---|---|---|
| Jan. | 21, 1895. | Chas. H. Graham | . | . | $2,500.00 |
| Jan. | 28, 1895. | Henry E. Hayward, Jr. | . | | 1,000.00 |
| Feb. | 20, 1895. | Samuel Chew | . | . | 1,000.00 |
| March | 16, 1895. | C. Hartman Kuhn | . | . | 1,000.00 |
| | | W. F. Smith | . | . | 1,000.00 |
| | | J. Howard Yardley | . | . | 1,000.00 |
| | | W. W. Jones, | | | |
| | | For W. W. Jones, | | | |
| | | J. C. McNaughton, | | | |
| | | L. A. Conwell | . | . | 2,500.00 |

" This agreement made this                    day of
between Lewis Rodman Schultz, James Paul Gaylord, and
Mathias Pfatischer, all of the city and county of Philadelphia,
Pennsylvania; and the Pennsylvania Electric Engineering
Company, a corporation doing business at Philadelphia, Penn-
sylvania, party of the first part, and                      of the
city of                county of                state of
party of the second part, witnesseth :

" That whereas the party of the first part is the owner of an
option to purchase the full and exclusive right, title and inter-
est in and to the improvements described and contained in
applications for letters patent granted and pending in the
United States patent office and filed by Engelbert Arnold, of
Zurich, Switzerland, and in and to any and all other improve-
ments in alternating current motors and any methods for oper-
ating alternating current motors that the said Engelbert Arnold
may make for the whole continent of North America by virtue
of an instrument in writing executed by the said Engelbert
Arnold and the party of the first part on the second day of
January, 1894; and, whereas the party of the second part
desires to acquire an interest in the rights acquired by the
party of the first part from the said Engelbert Arnold by virtue
of the agreement aforesaid.

" Now, therefore, the said parties have agreed together as fol-
lows :

" First. The party of the first part for the consideration of
                    dollars, payable as hereinafter mentioned, does
hereby sell, assign and convey unto the party of the second
part, his heirs and assigns          per cent of the right, title
and interest conveyed by said Engelbert Arnold to the party of
the first part (each of them) by said agreement, free from the
obligations of the party of the first part to the said Engelbert
Arnold.  For example, if the proposed company is formed un-
der a basis of $500,000 capitalization,          per cent would
represent        in stock.

" Second. The party of the first part covenants and agrees with
the party of the second part that they, the party of the first
part are the exclusive owners of the entire right, title and in-
terest herein conveyed, and that they and each of them have
and has a good right to sell and convey the same.

" Third. The party of the first part hereby further covenants and agrees that they shall and will without recourse to the party of the second part, make the payments and fulfill other conditions specified in the said agreement they have with the inventor, and shall and will exercise the option therein set forth and acquire unconditionally the rights therein specified and patents therein mentioned.

" Fourth. The party of the first part hereby acknowledges the receipt of                    dollars to them in hand paid by the party of the second part, as the full consideration of this agreement."

The affidavit of defense was as follows:

That on or about February 20, 1895, the defendant above named agreed to subscribe the sum of $1,000 towards the preliminary expenses incident to the incorporation of a certain corporation to be known as the Arnold Monophase Electric Company, said subscription being based upon an agreement that the sum of $10,000 should be completely and fully subscribed and paid before March 15, 1895. The said sum of $10,000 was not subscribed on or before March 15, 1895, and the defendant above named has no knowledge that any part of the said $10,000 has been subscribed and paid, as set forth in the agreement to subscribe.

That upon the failure to obtain said subscriptions, amounting to $10,000, the said agreement upon which the defendant agreed to subscribe the sum of $1,000 failed and became null and void.

That said defendant has not at any time paid to Lewis R. Schultz or J. Paul Gaylord the sum of $500 on account of any subscription to the stock of the said plaintiff company as set forth in the plaintiff's statement of claim.

Defendant further avers that he is not indebted to the plaintiff in the sum of $500, as set forth in the plaintiff's statement of claim.

All of which defendant expects to be able to prove at the trial of the cause.

*Error assigned* was in making absolute a rule for judgment for want of a sufficient affidavit of defense.

*John G. Johnson,* with him *H. A. Davis,* for appellant.—The

agreement sued upon was not an agreement with the corporation. It was not an agreement to pay to the corporation $1,000, but $1,000 was to be paid for preliminaries, before the formation of the company, and paid into the hands of third parties, who were to spend it in ways they saw fit previous to forming the company.

If it be admitted, for the sake of argument, that it was an agreement with a corporation, it was illegal, because the agreement to convey $3,000 worth of stock for $1,000 cash is an invalid agreement and cannot be enforced.

If it was an agreement that certain parties should obtain stock, the consideration moving from them, and they to receive $1,000, the suit must be commenced, of course, by those parties.

The corporation is a New Jersey corporation, and, it being a Pennsylvania contract, it must impliedly follow that the corporation to be formed was to be a Pennsylvania corporation.

There was no consideration for the agreement.

There was a lack of mutuality, as the corporation was bound to do nothing.

The agreement shows impliedly what the affidavit swears to, namely, it was conditioned upon the subscription list being completed by March 15.

No recovery can be had under any circumstances, owing to the lapse of time in organizing the company.

The agreement sued upon was not an agreement with the corporation: Poughkeepsie, etc., Plankroad Co. v. Griffin, 24 N. Y. 150; 1 Morawetz on Corporations, sec. 53.

*Charles F. Eggleston,* with him *William W. Weigley,* for appellee.—Where the defense set up is in the nature of confession and avoidance, the facts relied upon must be set out fully and specifically so that their relevancy and sufficiency may be determined by the court on a motion for judgment based on their alleged insufficiency: Hutton v. McLaughlin, 1 Pa. Superior Ct. 642 ; Cosgrave v. Hammill, 173 Pa. 207 ; Class v. Kingsley, 142 Pa. 636 ; Galena Mining, etc., Co. v. Frazier, 20 Pa. Superior Ct. 394.

If it was a written agreement, the omission to set it forth in full is a fatal defect. Where in an affidavit of defense, refer-

ence is made to a paper, a copy must be annexed in order that the court may judge of its legal effect : Erie City v. Butler, 120 Pa. 374.

If it were an oral agreement, a fortiori should all its terms be set forth.  In the absence of any allegation of fraud, accident or mistake, parol evidence to vary, alter or contradict the terms of a written agreement, or of an understanding different from that embodied therein, or of matter inconsistent therewith, is inadmissible : Dixon-Woods Co. v. Phillips Glass Co., 169 Pa. 167 ; Hoffman v. Bloomsburg, etc., R. R. Co., 157 Pa. 174.

Time is not of the essence of a contract unless so made by the express stipulation of the parties, or unless it is to be implied from the nature of the subject-matter that the parties so contemplated it; and no such implication will ordinarily be made as to contracts for the payment of money : Decamp v. Feay, 5 S. & R. 323 ; Tiernam v. Roland, 15 Pa. 429 ; Summerson v. Hicks, 134 Pa. 566 ; D'Arras v. Keyser, 26 Pa. 249.

OPINION BY WILLIAM W. PORTER, J., November 19, 1902 :

Judgment was entered in this case for want of sufficient affidavit of defense.  The duty of this court is to determine whether the plaintiff was entitled to such judgment.  We have given the statement of claim critical study.  From it, even as supplemented by the argument, we are unable to determine upon what right the plaintiff's claim is founded.  The action is based upon writings, copies of which are exhibited and which will doubtless appear in the report of the case.  They are inartificially drawn and their interpretation is a matter of no little difficulty.  The statement of claim avers that the defendant subscribed to certain preliminary expenses (prior to incorporation of the plaintiff company) in the taking out of patents and the manufacturing of certain electric motors as invented by one Arnold of Switzerland, in accordance with the subscription list and agreement appended.  This subscription list provided for the contribution of $10,000 and was signed by the plaintiff with others whose names appear.  The statement further avers that a sum in excess of the $10,000 was paid in and expended in the said preliminary expenses.  It does not aver that these contributions were made by the parties signing the

agreement with the defendant. It does not appear distinctly to whom the subscriptions were to be paid. It may be that Messrs. Gaylord and Schultz, representing, as the paper says, the proposed company, were to handle the fund for exploiting the patents. The statement then avers that the parties of the first part, probably meaning Gaylord and Schultz, took up an option with Arnold to purchase the patent rights.

The averment then follows that the plaintiff company was incorporated and became by various assignments the successor of Gaylord and Schultz (as well as of one Pfatischer and a corporation called the Pennsylvania Electric Engineer Company) and all other parties having any interests in the said patents as the owner of said patent rights and "of said subscription." Then follows an averment of tender by the plaintiff company of shares of stock to the defendant and the demand for the balance of the alleged unpaid subscription.

If the present action is based upon a subscription to the capital stock of the plaintiff company, it presents the case of a contract for the issuance of $3,000 of stock for a payment of $1,000. But the plaintiff in his argument explicitly denies that the action is based upon a subscription to the capital stock of the company, although in other branches of the argument he presents cases to our notice whose application is only possible to the case of a suit for a subscription to the stock of a proposed company. The judgment cannot be sustained upon an interpretation of the writings disavowed by the plaintiff himself.

The plaintiff, as has been seen, also alleges that the company has acquired the right to the unpaid subscription to the original fund, by assignment or succession. This is of course at variance with a claim based upon original subscription. Furthermore, the action is brought in the company's own name. If the right is to be assumed to be derived from Gaylord and Schultz, it appears, both from the papers and from the averments of the statement, that they were not the sole owners of the interest in the patents, and no consideration is made to appear to support a promise to pay to them the subscription. No obligation is assumed on their part to procure the issuance and delivery of stock. The only apparent consideration for the subscription agreement is found in the mutual promises of all the subscribers. The cosubscribers might enforce contribu-

tion to the fund by the present defendant. To be successful in this, however, the burden would be upon them to show that their own contributions had been paid. If the plaintiff company has succeeded to their rights by assignment (which does not appear) the statement of claim is faulty in failing to aver that these cocontributors did in fact pay the amount of their subscriptions. Furthermore, if the suit is based upon a right derived from the cocontributors, the stock should have been tendered as in their right (if delivered to them for their interests in the patents) whereas the statement avers a tender of stock to the defendant by the company as if to hold him for a direct cash subscription to the stock of the company.

We are now determining only whether the plaintiff was entitled to his judgment and are not passing finally upon the effect of the writings exhibited. It is true that the affidavit of defense is weak in its averments. It does allege, however, that the terms of the agreement as to the time within which all of the subscriptions should be made and paid, in order to make the agreement obligatory, were violated, and it denies indebtedness to the plaintiff corporation in terms. These allegations, in view of the fact that the statement of claim is not sufficiently clear to entitle the plaintiff company to the entry of judgment, requires us to reverse the order of the court below.

The judgment is reversed and a procedendo is awarded, with leave to the plaintiff to amend.